IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SAADIQ MCCRAY,<br><br>　　　　Defendant. | CRIMINAL NO. JKB-23-194 |

## GOVERNMENT'S SENTENCING MEMORANDUM

Saadiq McCray ("Defendant") pled guilty to Count One of the Indictment in this case, charging him with possession of a firearm and ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g)(1). As set forth more fully below, the Government requests that the Court sentence the Defendant to 96 months of incarceration to the custody of the Bureau of Prisons ("BOP").

## SENTENCING GUIDELINES

The Government adopts the findings of the Presentence Investigation Report ("PSR") ECF No. 45, which accurately reflects the Defendant's adjusted offense level of 30 based on United States Sentencing Guidelines ("USSG") §§ 2K2.1(a)(1) and (b)(6)(B). Additionally, the Defendant accepted responsibility for his misconduct and accordingly the Government does not oppose a 2-level reduction in the Defendant's adjusted offense level pursuant to USSG § 3E1.1(a). The Government also anticipates making a motion at sentencing pursuant to USSG § 3E1.1(b) for an additional 1-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. Therefore, the PSR also accurately reflects that the likely total offense level at sentencing will be 27.

The PSR also accurately reflects the Defendant's criminal history category of III based on four points. The applicable guideline range for this offense level and criminal history category is 87 to 108 months. As further discussed below, a sentence of 96 months is appropriate under the factors set forth in 18 U.S.C. § 3553(a).

### FACTORS SET FORTH IN 18 U.S.C. § 3553(a)

Under 18 U.S.C. § 3553(a), a sentencing court "shall impose a sentence sufficient, but not greater than necessary" to satisfy the purposes of sentencing set forth in § 3553(a)(2). The sentencing court should consider various factors, including (among other things)[1]:

- the nature and circumstances of the offense and the history and characteristics of the defendant (18 U.S.C. §3553(a)(1));

- the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "to afford adequate deterrence to criminal conduct"; "to protect the public from further crimes of the defendant"; and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner" (18 U.S.C. § 3553(a)(2));

- the applicable guidelines level ((18 U.S.C. § 3553(a)(4)); and

- the need to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" (18 U.S.C. § 3553(a)(6)).

In this case, the § 3553(a) factors favor a sentence of 96 months' imprisonment. The

---

1   The Government has not copied the entirety of § 3553(a) into this memorandum. The portions of the statute cited herein are the portions most relevant to this sentencing.

Government will address certain factors in the following sections.

    **A.    Nature and Circumstances of the Offense and the Need for the Sentence to Reflect the Seriousness of the Offense (18 U.S.C. § 3553(a)(1), (a)(2)(A)).**

The crimes are serious. The Defendant was selling cocaine and fentanyl in the Douglas Homes neighborhood of Baltimore City, Maryland, armed with a 9mm handgun loaded with 16 rounds of ammunition in a high-capacity magazine. This area is notorious for drug trafficking and gun violence. The Court is certainly aware of the negative impact of drug trafficking and gun violence. Baltimore City, the state of Maryland, and this country suffer from a wildly disproportional problem of gun and drug-related violence. Those problems manifest in human lives lost, families broken, and neighborhoods turned into open air drug markets. Every illegal gun contributes to that environment; every vial of cocaine and gelcap of fentanyl sold contributes to the illegal drug market; all of it degrades communities. All too often, the presence of firearms in the mix of drug trafficking results in the loss of lives to violence. Sometimes the life lost belongs to the person holding the gun. Sometimes it belongs to an innocent caught in the crossfire.

The Government does not attribute all of that to the Defendant. This is not a homicide or a drug overdose case. But the Defendant's conduct in this case contributed to the market and environment in which all that death and despair occur. And the Defendant's path was in that direction. Fortunately for him, and for others in the community, police intervened before real tragedy struck.

The Defendant may argue that his offense is "non-violent." That is true, in a technical, categorical sense. And the fact that the Defendant did not injure any civilians, or himself, or the involved officers is a factor in his favor. At the same time, however, writing off the Defendant's

crime as "non-violent" is reductive and ignores much of the crime's substance.

The crime was violent in the sense that a loaded firearm was present and could have resulted in people being hurt or killed. The crime was violent in the sense that the Defendant's involvement in selling cocaine and fentanyl prior to being arrested all contribute to the illegal drug market and thus helped fuel the degradation and misery associated with drug trafficking, including the associated violence and overdoses. The crime was violent in that there is no way to know what quantity of drugs previously ended up being sold and consumed or used by others as a result of the Defendant. Those drugs further contributed to the violence and addiction caused by the drug trade in Baltimore City and elsewhere. Finally, the crime was violent in the impact it had on the Brooklyn community and surrounding neighborhoods.

Sometimes crimes like this one are incorrectly referred to as "victimless." The reality is that there *were* victims in this case. The residents of the Douglas Homes community and the surrounding area are victims who, no doubt, do not want armed drug-dealers selling drugs in their neighborhood. The sentence should take into consideration the impact on communities, the victims of gun crimes, and the victims of drug overdoses. We should be mindful of the experience of families impacted by gun violence, by drug addiction, and by the cost inflicted on communities due to illegal guns and drugs.

This is a case about the Defendant's choices. This is not a case about something that happened *to* the Defendant. This is not a "situation" in which he found himself or some unavoidable event in which he was trapped. The Defendant made choices that led to the charges here. He chose to participate in the highly dangerous, highly volatile, and highly illegal drug trade. The Defendant's choices made this case. The sentence should reflect those choices.

Although the Defendant has taken responsibility for his actions, there is no doubt that his conduct was obviously dangerous. The Defendant exposed himself and the community to immeasurable harm. Accordingly, a total sentence of 96 months imprisonment is warranted and sufficient. The Government's recommendation would serve several § 3553(a) factors. It would reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. 18 U.S.C. § 3553(a)(2).

### B.  The History and Characteristics of the Offender (18 U.S.C. § 3553(a)(1))

The Defendant's criminal history prior to the instant offense paints a discouraging picture. His past shows that he is no newcomer to violence or drug dealing. During the last decade, the Defendant had been arrested at least a dozen times in which the Government is aware involving violence and the drug trade.

The Defendant first made contact with the Maryland Department of Juvenile Services ("DJS") for robberies, assault, and armed carjacking. The Defendant was offered probation to DJS at the age of 16 for a robbery in 2015 and another one in 2016. Despite intervention by DJS, the Defendant continued his criminal behavior into adulthood.

At age eighteen, the Defendant was convicted of possession with intent to distribute narcotics. He was offered probation before judgment and placed on supervised probation for three years. Not even halfway into his probation, the Defendant was arrested again near the Douglas Homes community for possession with intent to distribute narcotics, specifically cocaine in which he possessed some 128 vials. Despite being on probation for the same conduct, he was given a five-year suspended sentence and placed on another period of probation. This conviction violated his previous probation, but that probation was continued.

˜5˜

While on supervised probation, the Defendant was arrested for the instant offense in which he was, again near Douglas Homes, and again in possession of distribution quantifies of cocaine, plus fentanyl, after coming out of a stash house in which police were about to execute a search warrant. This time, the Defendant was armed with a loaded handgun and high-capacity magazine. While the instant case was pending, the Defendant admitted to violating his state probation on October 4, 2024, received a time-served sentence, and the probation was closed out unsatisfactorily.

Clearly the Defendant's past reflects one of a recidivist nature, unchallenged by services offered by DJS and any prior period of incarceration or supervision offered by the state. As such, the sentence imposed in this case should reflect the Defendant's resistance to adapt to being a law-abiding citizen. Taking into consideration the Defendant's background, a sentence of 96 months is necessary, rather than the Defendant's below guidelines recommendation.

The Defendant's recommendation would place too much emphasis on one or two § 3553(a) factors. The Defendant's recommendation would not reflect the seriousness of the offense, the need to send a reasonable message of general deterrence, the need to promote respect for the law, to provide just punishment, or the need to avoid unwarranted disparities with similarly situated defendants. Even focusing on those § 3553(a) factors, there are aspects of the Defendant's history and characteristics that clearly reflect a need to further protect the community. The facts of this case and the Defendant's criminal history, including his inability to not engage in armed drug dealing while under state supervision, are matters of grave concern in that regard. Accordingly, the Defendant's conduct and criminal record during the years preceding the instant offense suggest the need for a substantial sentence.

### C. The Purposes of Sentencing Including the Need to Send a Reasonable Message of General Deterrence (18 U.S.C. § 3553(a)(2)).

A below guidelines sentence would not send an appropriate message to other potential offenders. Such a sentence would be invariably cited by other defendants seeking minimal punishment based on post-offense rehabilitation. For good or ill, it has become a common aspect of sentencing in this District for defendants to cite to individual other cases (in sentencing contexts and in compassionate release contexts) in support of comparatively lower sentences. To some degree, every sentencing has become a measuring stick for every other sentencing despite the fact that every case is different. When the Government is seen as acceding to or not opposing sentences that do not send a reasonable message of general deterrence, the perceived precedential value becomes even stronger. In this respect, a 96-month sentence will send a message to other offenders as a measure of what is appropriate punishment. A below guideliens sentence fails to accomplish that goal. The facts of this case and the Defendant's record support the Government's recommendation.

## CONCLUSION

This is the Defendant's fifth serious conviction in which the Government is aware. The Defendant has failed to change his ways. No prior services, term of incarceration, or period of supervision have changed the path of the Defendant. The consideration of all of the sentencing factors arrives at a sentence of 96 months as the just sentence to impose. Therefore, the Government requests that this Court sentence the Defendant to 96 months of incarceration to the BOP. Such a sentence is sufficient, but not greater than necessary to satisfy the purposes of sentencing under 18 U.S.C. § 3553(a).

Respectfully submitted,

Kelly O. Hayes
United States Attorney


By:_____/s/_____
James I. Hammond
Assistant United States Attorney
36 South Charles Street, 4th Floor
Baltimore, Maryland 21201

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 24, 2025, a copy of the foregoing was sent by ECF service to Christina Wong, Esq., and Sasha Garcon, Esq., counsel for the Defendant.


_____/s/_____
James I. Hammond
Assistant United States Attorney